**SULAIMAN LAW GROUP, LTD**
Alexander J. Taylor (State Bar No. 332334)
2500 S. Highland Avenue
Suite 200
Lombard, Illinois 60148
Telephone: 331-307-7646
Facsimile: 630-575-8188
E-Mail: ataylor@sulaimanlaw.com
*Attorney for the Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA D. MOORE, | Case No. 2:25-cv-00824 |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | **1. VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT, 15 U.S.C. §1679 ET SEQ.;** |
| CORDOBA LEGAL GROUP LLC, and LEJEUNE LAW OFFICE, P.C., | **2. VIOLATION OF THE CALIFORNIA CREDIT SERVICES ORGANIZATIONS ACT OF 1984, CAL. CIV. CODE §1789.10 ET SEQ.;** |
| Defendants. | **3. VIOLATIONS OF THE CALIFORNIA FAIR DEBT SETTLEMENT PROCEDURE ACT, CAL. CIV. CODE § 1788.300 *et seq.*; and,** |
| | **4. BREACH OF FIDUCIARY DUTY** |
| | **DEMAND FOR JURY TRIAL** |

## COMPLAINT

NOW comes SANDRA D. MOORE ("Plaintiff"), by and through the undersigned, complaining as to the conduct of CORDOBA LEGAL GROUP LLC

1

("Cordoba") and LEJEUNE LAW OFFICE, P.C. ("LeJeune") (collectively "Defendants")) as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.* the California Credit Services Organizations Act of 1984 ("CCSOA") pursuant to Cal. Civ. Code §1789.10 *et seq.,* and the California Fair Debt Settlement Practices Act ("CFDSPA") under Cal. Civ. Code § 1788.300 *et seq.* for Defendant's unlawful conduct.

## JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within the Central District of California and a substantial portion of the events or omissions giving rise to the claims occurred within the Central District of California.

## PARTIES

4. Plaintiff is a natural "person," as defined by 47 U.S.C. § 153(39), over 18 years of age, residing in Long Beach, California, which lies within the Central District of California.

5. Cordoba is a law firm, credit repair organization, and debt settlement provider that claims to assist consumers with their credit issues by offering their services in negotiating down the amount of debt owed so that consumers can address these debts and ultimately become debt free. Cordoba is a limited liability company organized under the laws of the state of Florida with its principal place of business located at 102 NE 2nd Street, Unit 252, Boca Raton, Florida 33432.

6. LeJeune is a law firm and, upon information and belief, entity with whom Cordoba purportedly works with in connection with the provision of its debt settlement and credit repair services to consumers. LeJeune is a professional corporation organized under the laws of the state of California with its principal place of business located at 402 West Broadway, Unit 400, San Diego, California 92101.

7. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

8. In approximately January of 2024, Plaintiff was looking to consolidate her debt, prompting her to begin looking into the possibility of receiving a debt consolidation loan so as to go about improving her creditworthiness and simplify her payments.

9. Plaintiff filled out information online expressing interest in receiving a consolidation loan that would decrease her monthly payments and ultimately save Plaintiff substantial sums in paying down her debt.

10. However, rather than being contacted about a potential consolidation loan, Plaintiff was contacted by Cordoba's representative selling their services.

11. Cordoba represented to Plaintiff that its services would result in Plaintiff being completely debt free, so long as Plaintiff made a series of payments to Cordoba over approximately a couple of years.

12. Cordoba advised that Plaintiff would enroll certain debts in its program, and then use Plaintiff's monthly payments to enter into negotiations with creditors and debt collectors to achieve a reduced balance, ultimately helping Plaintiff pay down her debts and improve her credit.

13. Plaintiff would save money, have lower monthly payments, and improve her credit through Cordoba's program.

14. Despite representing that there would be an initial minimal impact on Plaintiff through its services, Cordoba nevertheless assured Plaintiff that once settlements were reached and payments made, her credit would improve.

15. Cordoba made it seem as though it would be picking up payments to Plaintiff's creditors, just at lower balances.

16. Cordoba further suggested that Plaintiff would have an attorney in her state assisting with her account and the settlement efforts being made.

17. Additionally, Cordoba made it seem as though Defendants were providing some sort of government-assistance program or that the services being offered were otherwise subsidized in some way by the government.

18. Finding Cordoba's representations desirable, on or about January 15, 2024, Plaintiff entered into an agreement with Cordoba for the provision of services.

19. Cordoba's contract represented that LeJeune was Plaintiff's legal counsel in connection with the services, and that LeJeune would perform or otherwise supervise work being done on Plaintiff's behalf in conjunction with Cordoba.

20. Upon information and belief, LeJeune and Cordoba failed to provide any attorney-related services, including meaningful supervision of non-attorney work, purportedly being provided to Plaintiff by Cordoba or any other party.

21. Defendants generally provide misleading and deceptive representations regarding the amount and extent of attorney involvement in the services at issue.

22. Plaintiff then began making her monthly payments to Defendant, which total approximately $260 per month.

23. Plaintiff persisted in making these payments for approximately 9 months.

24. While Plaintiff was instructed by Cordoba to cease paying her creditors and to instead divert those sums to Defendants, Cordoba similarly suggested that it would be picking up payments to her creditors and simply consolidate her payments into a lower monthly amount.

25. However, rather than picking up payments to her creditors, Defendants were instead letting Plaintiff's obligations go into default prior to attempting to resolve Plaintiff's obligations.

26. Defendants' advice and conduct caused Plaintiff's credit score to drop precipitously, far greater than the minimal impact Cordoba represented would occur through its services, as accounts were being charged off by creditors.

27. Furthermore, once settlements were reached, Plaintiff came to realize the extent to which Defendants were collecting more from her monthly payments in fees than what was going to her creditors.

28. Upon information and belief, Defendants intentionally structured Plaintiff's payment schedules and its collection of fees in a manner designed to ensure it received compensation for its services, despite minimal actual progress having been made on Plaintiff paying down her debts.

29. Defendants and their agents completely failed to clearly or accurately explain the nature of Defendants' fees or how and when fees would be charged.

30. Frustrated by the nature of Defendants' conduct, Plaintiff attempted to cancel Defendants' services.

31. Defendants represented to Plaintiff that she could not cancel, but would instead have to stop payments through her bank.

32. However, Plaintiff maintained both a contractual and legal right to cancel Defendants' services, and Defendants representations to the contrary were designed to keep Plaintiff paying for services she no longer wanted.

33. Eventually, Plaintiff was able to cancel Defendants' services.

34. Notwithstanding Plaintiff's cancellation of Defendants' services, Defendants failed to refund Plaintiff for payments made in connection with services Defendant failed to completely perform for Plaintiff.

35. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendants for deficient and misrepresented services, denial of the benefit of her bargain with Defendants, diminished credit score, diminished credit capacity, as well as numerous violations of her state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair and debt settlement organizations.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT
PLAINTIFF AGAINST DEFENDANTS

36. Plaintiff repeats and realleges paragraphs 1 through 36 as though fully set forth herein.

37. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

38. Cordoba is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the

mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

39. Cordoba represented, both expressly and by implication, that successfully completing its program would result in improving Plaintiff's credit given the extent to which its services would result in Plaintiff being debt free, which would reduce the debt load apparent on her credit report, and thus improving her credit.

40. LeJeune is further a "credit repair organization" given the representations made regarding its involvement in Cordoba's services which, given the nature of the services and representations made, underscore LeJeune's purported provision of services with an explicit and implicit purpose of improving Plaintiff's credit.

### a. Violations of CROA § 1679b(a)

41. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits **any person** from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), **any person** is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

42. Defendants violated the above provisions of the CROA through the deceptive and misleading representations made regarding where Plaintiff's monthly payments would be going and how Plaintiff's enrolled debts would be impacted. Defendants' agent represented to Plaintiff, around the time Plaintiff signed the agreement with Cordoba, that Plaintiff's monthly payments would go towards paying down her creditors, leaving Plaintiff with the impression that Defendants would be picking up her payments. However, Defendants deceptively and misleadingly omitted that Plaintiff's obligations would have to go into default in order for negotiation or payment efforts to commence.

43. Defendants further violated the above provisions of the CROA through their concerted and deceptive conduct and representation as to the extent of attorney involvement in the services at issue. Upon information and belief, there was minimal, if any, attorney services or oversight provided, either by LeJeune or Cordoba, in connection with Defendants' services. Instead, the only services rendered were by non-attorney representatives whose sole job function is to resolve consumers' debt. Defendants deceptively suggested Plaintiff had a level of representation which was entirely illusory.

44. Defendants further violated the above provisions of the CROA through the deceptive and misleading representations made regarding the services' impact on Plaintiff. Defendants said that Plaintiff would ultimately enjoy an improvement to her credit, and that any negative aspects of its services would be minimal. However,

Plaintiff's credit score plummeted through Defendants' services, and her credit failed to improve in the manner Defendants represented once settlements were reached.

45. Defendants further violated the above provisions of the CROA through their deceptive bait and switch advertising. Plaintiff was roped into and sold on Defendants' misleading services under the guise that she was exploring debt consolidation loans, and Defendants services were represented as a better alternative to consolidation financing or as otherwise being an option when such financing was unavailable. That Plaintiff was roped into Defendants' services under these pretexts further goes about suggesting that an implicit and explicit purpose of Defendants' services was to ultimately make Plaintiff more creditworthy.

46. Cordoba further violated the above provisions of the CROA through its deceptive and misleading conduct in representing its services one way when inducing Plaintiff to sign, only to cut against or blatantly contradict those representations through the contractual terms to which Plaintiff was subjected. Cordoba seeks to benefit from the beneficial and positive representations it makes to consumers orally when describing the services, only to bury a number of contradictory disclaimers in its dense contractual language that Plaintiff was not provided an adequate or sufficient time to review. Cordoba's inclusion of a merger and integration clause only further illustrates the deceptive and misleading nature of its conduct.

47. Defendants further violated the above provisions of the CROA through the representations made that Defendants were providing some sort of government

program. Defendants made this representation in an attempt to lend a sense of legitimacy to their operations, and Plaintiff relied on this representation when deciding whether to use Defendants' services.

48. Defendants further violated the above provisions of the CROA through their deceptive omission and obfuscation of the way and manner in which it assessed its fees for settling debts. Defendants agents failed to clarify how and when Defendants charged for services, and Plaintiff was not provided an adequate or sufficient explanation of Defendants' fee structure when agreeing to use the services.

49. Defendants further violated the above provisions of the CROA when they deceptively suggested that Plaintiff would have to stop payments with her bank in order to cease using Defendants' services. Plaintiff maintained an absolute right to cancel, and Defendants' representations to the contrary were designed to deceptively keep Plaintiff paying for Defendants' ineffective and unwanted services.

50. Defendants further violated the above provisions of the CROA through their deceptive conduct in structuring settlements so as to justify their retention of payments, regardless of whether a consumer had made significant progress towards actually resolving an enrolled obligation.

### b. Violations of CROA § 1679b(b)

51. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for

11

the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

52. Cordoba violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Upon information and belief, Cordoba charged Plaintiff various fees, including settlement fees, prior to the complete performance of the services it had agreed to perform.

### c. Violation of CROA § 1679c

53. The CROA provides that a credit repair organization must provide consumers with certain written disclosures in the contract underpinning the provision of credit repair services to consumer. Pursuant to 15 U.S.C. § 1679c(b), "the written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

54. Cordoba violated 15 U.S.C. §§ 1679c(a)-(b) through its failure to provide the written disclosures required under § 1679c. Cordoba never provided such disclosures, nor did it provide a separate document containing such disclosures.

### d. Violation of CROA §§ 1679d

55. The CROA, pursuant to 15 U.S.C. § 1679d, outlines the various requirements for contracts entered into between credit repair organizations and consumers.

56. Cordoba violated § 1679d through the noncompliant nature of its contract.

57. The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Plaintiff, SANDRA D. MOORE, respectfully requests that the Honorable Court enter judgment in her favor as follows:

   a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

   b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

   c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

   d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

   e. Awarding any other relief as the Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE CALIFORNIA CREDIT SERVICES ORGANIZATION ACT OF 1984
PLAINTIFF AGAINST DEFENDANTS

58. Plaintiff restates and realleges paragraphs 1 through 36 as though fully set forth herein.

59. Plaintiff is a "buyer" as defined by Cal. Civ. Code § 1789.12(c).

60. Defendants are "credit services organization[s]" as defined by Cal. Civ. Code § 1789.12(a).

   **a. Violation of CCSOA § 1789.13**

61. The CCSOA, pursuant to Cal. Civ. Code § 1789.13, provides a list of prohibited conduct for credit services organizations.

62. Pursuant to § 1789.13(a), a credit services organization cannot "charge or receive any money or other valuable consideration prior to full and complete performance of the services the credit services organization has agreed to perform for or on behalf of the buyer."

63. Cordoba violated § 1789.13(a) when it charged and received money from Plaintiff without fully completing the services. As alluded to *supra.,* Defendant improperly retained Plaintiff's payments without first fully performing the services justifying such retained payments.

64. Pursuant to § 1789.13(g), credit services organization cannot "[m]ake or use untrue or misleading representations in the offer or sale of the services of a credit services organization." Similarly, pursuant to § 1789.13(h), a credit services organization cannot "[e]ngage, directly or indirectly, in an act, practice, or course of business that operates or would operate as a fraud or deception upon a person in connection with the offer or sale of the services of a credit service organization."

65. Defendants violated §§ 1789.13(g)&(h) through their deceptive and misleading representations regarding the nature, cost, and efficacy of its services, as discussed *supra.*

### b. Violations of CCSOA §§ 1789.14-1789.15

66. The CCSOA, pursuant to Cal. Civ. Code § 1789.15, provides the extent of information that must be provided to a buyer by a credit services organization under § 1789.14.

67. Cordoba violated these provisions of the CCSOA by failing to provide Plaintiff such disclosures and similarly failing to provide Plaintiff a copy of the disclosures.

WHEREFORE, Plaintiff, SANDRA D. MOORE, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Cal. Civ. Code § 1789.21(a);

c. Awarding Plaintiff punitive damages pursuant to Cal. Civ. Code § 1789.21(a);

d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Cal. Civ. Code § 1789.21(a); and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT III – VIOLATIONS OF THE CALIFORNIA FAIR DEBT SETTLEMENT PRACTICES ACT
PLAINTIFF AGAINST DEFENDANTS

68. Plaintiff restates and realleges paragraphs 1 through 36 as though fully set forth herein.

69. Plaintiff is a "consumer" as defined by Cal. Civ. Code § 1788.301(d).

15

70. Defendants are "debt settlement provider[s]" as defined by Cal. Civ. Code § 1788.301(a).

71. Defendants are not exempt from the CFDSPA's applicability as attorneys, as they do not remotely satisfy all of the criteria for such exemption. *See* Cal. Civ. Code § 1788.304(c).

### a. Violation of CFDSPA § 1788.302

#### i. Violations of § 1788.302(a)

72. The CFDSPA, pursuant to Cal. Civ. Code § 1788.302(a), provides that "[a] debt settlement provider shall not engage in false, deceptive, or misleading acts or practices when providing debt settlement services." Further, "without limiting the general applicability of the foregoing," conduct violates § 1788.302(a) if it includes "[o]mitting any material information." Cal Civ. Code § 1788.302(a)(3).

73. Defendants violated § 1788.302(a) of the CFDSPA in much the same way they violated the CROA and CCSOA's prohibitions on deceptive and misleading conduct.

74. Defendants further violated Cal. Civ. Code § 1788.302(a)(3) when they omitted material information regarding the nature and impact of their services.

#### ii. Violations of § 1788.302(b)

75. The CFDSPA, pursuant to Cal. Civ. Code § 1788.302(b)(1), outlines various disclosures that must be provided at least three business days prior to the execution of a debt settlement contract.

76. Defendants violated Cal. Civ. Code § 1788.302(b)(1) through its failure to provide the disclosures required by the CFDSPA in the manner required by the CFDSPA.

77. Pursuant to Cal. Civ. Code § 1788.302(b)(2), the contract between a consumer and buyer must contain certain required language and information.

78. Defendants violated Cal. Civ. Code § 1788.302(b)(2) through their failure to include the required information and statements in the contract entered into with Plaintiff. Defendants further required Plaintiff to use its preferred payment vendor without any meaningful alternative or avenue for consumers to seek an alternative provider of dedicated accounts.

### iii. Violations of § 1788.302(c)

79. The CFDSPA, pursuant to Cal. Civ. Code § 1788.302(c), provides that "[a] debt settlement provider . . . shall not engage in unfair, abusive, or deceptive acts or practices when providing debt settlement services . . . ."

80. Defendants violated § 1788.302(c) through its engaging in unfair, abusive, and deceptive acts through its provision of services to Plaintiff as discussed *supra*.

81. Pursuant to § 1788.302(c)(5), it is a violation of the above general prohibition for a debt settlement provider to fail to provide a monthly statement of accounting to consumers.

82. Defendants violated § 1788.302(c)(5) through their failure to provide this information to Plaintiff.

### iv. Violations of § 1788.302(d)

83. Pursuant to § 1788.302(d)(3), a provider must provide certain pieces of information after a consumer cancels a contract for services.

84. Defendants violated § 1788.302(d)(3) through their failure to engage in the required actions following Plaintiff's cancellation of her agreement with Defendants.

WHEREFORE, Plaintiff, SANDRA D. MOORE, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Cal. Civ. Code § 1788.305(b)(1)(B);

c. Awarding Plaintiff statutory damages, pursuant to Cal. Civ. Code § 1788.305(b)(1)(A), of $5,000.00 per violation of this title;

d. Awarding Plaintiff punitive damages pursuant to Cal. Civ. Code § 1788.305(b)(3);

e. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Cal. Civ. Code § 1789.21(a); and,

f. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT IV – BREACH OF FIDUCIARY DUTY
#### PLAINTIFF AGAINST DEFENDANTS

85. Plaintiff restates and realleges paragraphs 1 through 36 as though fully set forth herein.

86. Defendants owed Plaintiff a fiduciary duty arising out of the nature of their relationship. Defendants were purporting to provide legal and financial services to Plaintiff, inherently rendering them her fiduciary.

87. Defendants breached the fiduciary duties owed Plaintiff given the nature of the "services" provided to Plaintiff. Defendants had a duty as a fiduciary to provide reasonable and beneficial services and advice to Plaintiff, yet repeatedly breached that duty through deceptive representations regarding the services, the misappropriation of Plaintiff's funds, and further provision of blatantly unlawful services. Defendants completely disregarded the fiduciary duties owed Plaintiff, and their breach of such duties caused Plaintiff significant financial harm as well as emotional distress.

WHEREFORE, Plaintiff, SANDRA D. MOORE, respectfully requests that the Honorable Court enter judgment in her favor as follows:

   a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

   b. Awarding Plaintiff actual damages;

   c. Award Plaintiff punitive damages;

   d. Award Plaintiff reasonable attorney's fees and costs;

   e. Enjoining Defendants from continuing its unlawful conduct; and,

   f. Awarding any other relief as the Honorable Court deems just and appropriate.

Dated: January 30, 2025                    Respectfully submitted,

                                           By: */s/ Alexander J. Taylor*
                                           Alexander J. Taylor (Bar No. 332334)
                                           **SULAIMAN LAW GROUP, LTD**
                                           2500 S. Highland Avenue, Suite 200
                                           Lombard, Illinois 60148
                                           Telephone: 331-307-7646
                                           Email: ataylor@sulaimanlaw.com
                                           *Attorney for Plaintiff*